Debt on the act 3 and 4 Geo. 2. c. 12. against taking excessive usury. The plaintiff declares that the defendant, after the 29th of September, 1730, viz. ultimo July, 1731, at, &c. upon a certain contract made between the defendant and one John White, did receive of the said White, by way of corrupt bargain and loan, three pounds currency, for gain, use, interest and giving day of payment of twenty pounds currency by the defendant to the said White lent over, and beside the lawful interest of six per cent, against the form of the Act of Assembly, &c. and in another action, declares in like manner for taking thirty six shillings for interest, and giving day of payment of twelve pounds, in which actions *25 the jury find specially; that White, some time in June, 1730, borrowed of the defendant ten pounds current, and in July, twelve pounds more, and gave separate bonds for payment of twenty pounds, and twelve pounds sterling at the end of a year. In April, 1732, White and the defendant made a settlement, and for the first year White was charged for principal money on both bonds, £36. 16s. current, and in October following White paid the said £36. 16s. and interest at six per cent, from the respective days of payment in the bonds, and the defendant received it. And if the Court adjudge the defendant guilty, they find him guilty of taking the said £4. 16s. above six per cent, upon the said bonds. And 1 take it upon the matter found, the defendant is not guilty of any breach of the said act; before the making of which, there was no law here that settled the rate of interest, nor wfere men subject to any penalty, though they took twenty or even fifty per cent. Now, this act provides that no person, after the 29th of September, 1730, upon any contract to be made after that time for loan of any monies, wares, he. shall take above six per cent, per annum, for forbearance, and all bonds, &e. made after that time, where more is received, shall be void, and any person who, after the time aforesaid, upon any contract to be made after the said 29th of September, shall receive above six per cent, shall forfeit double the value of the money, he. lent, he. It is plain this act was intended to refer only to contracts made after the 29th September, 1730. The penning of it is very strong to exclude all contracts made before the 29th September, 1730, and after the time aforesaid, is repeated no less than four times. Indeed, it would be very strange to subject them to such severe penalties, when they transgressed no law then in being. I suppose it will not be pretended that any bond taken before the 29th September, 1730, where more than six per cent, is received, is void. Then neither can the receiving the money upon such bonds, subject the obligee to the forfeiture of the double value for it. Receiving upon a contract made after the 29th September, is made penal by-this act. This I take to be very clear upon the words of the act, as well as evident from the reason and justice of the thing, and therefore it may be needless to mention the authorities upon this head. Rut as there are cases directly in point adjudged upon the statutes of usury in England, I will beg leave to mention two or three. Hawk. 1. P. C. 244, is express that a contract made before the act, 12 Anne, which-reduces interest to five per cent, is not within that statute, but that it is lawful to receive six per cent, (the legal interest before) upon such contract. See Dalt. 13. Rbym, 195. But we-go no further than to the last act against usury, 8 Geo. 2. *26 5. to prove such contracts are not within the first act, upon which this action is founded. The title of it is to make void certain contracts for paying excessive usury. It recites that there were several contracts subsisting, made before passing of the first act, or between the passing and commencement, and though there was no law in being to punish such unreasonable lenders, yet such contracts, which were always unrighteous, ought not to be binding. It is therefore enacted, that all bonds, &e. made before 29th September, 1730, where any interest above six per cent, is agreed to be paid, shall be void as to all interest above six per cent. Here is the judgment of the legislature,-that contracts made before the first act, or before the passing and commencement, are not punishable by any law, and all the punishment inflicted by this act, is only to make such contracts as were then subsisting void, as to all interest above six per cent.; but there is no penalty for receiving the money upon such contracts, if there was, the defendant would not be within it, the matter for which this prosecution is set on foot being transacted long before the making of this act, and was not a contract then subsisting? If then the defendant did not take above six per cent, upon a contract made after the 29th September, 1730, 1 conceive he is not guilty of the breach of any law ; and that there is nothing found in this verdict to prove he did, is very clear. In June and July, 1730, he let White have twenty and twelve pounds, and took his bond for payment of the like sum sterling at the end of a year. This, 1 hope, was a contract before the 29th September, 1730. It was lawful then for the defendant to receive the money due upon these howls, 1 mean without being subject to any penalty. In April, 1732, V? hite and the defendant made a settlement. At this time the defendant might lawfully take the sterling money reserved on the bonds, as 1 said, and might also lawfully receive six per cent, interest upon the money from the time it ought to have been paid ; and this is all he did do. The sterling money is paid in cosh, at fifteen per cent. the. lowest exchange, which makes £.36 16s, the money received upon the settlement, together with interest upon it, from the time it was payable by the bonds, at sv\ per cent. If títere is any pretence of a contract after the 29th September, 1730, in all this, it must be when this settlement was made; but upon that he took no more than six per cent. And bon ever unreasonable it might be to take fifteen per cent, upon the first contract, which was before the law, it is plain he has not taken more than is allowed by the law on any contract since, and therefore he is not guilty of any breach of the Act of Assembly; unless it is construed that the receiving money after the 29th September, 1730, upon a contract made before that time,
*27 where more than six per cent, is received, is within the act. But l humbly conceive such a construction can never prevail, being against die express nurds as well as intention of the act, which, as L have observed, is penned in the strongest terms to exclude all contracts before. It is against the sense of the legislature here, since the making of it, as Í have shewed from (lie second Act against usury; against the rule of construction in such cases, as appears from the cases 1 have read, adjudged upon this point in England ; against the private sentiment, as we may suppose, of Sir John Randolph, who, we all know, had the penning of the second act, and was very active in promoting it; and also against natural justice to punish any man for an action, innocent in itself with respect to human laws, by a law made cx post facto, which kind of laws have been always condemned as unjust, and therefore to make such a construction of a law against die express words of it, I apprehend can never be thought right ; and 1 hope the consequence of such a determination will be considered. It must affect a great number of people, who thought they might lawfully take more titan six per cent, before the act, and perhaps in conscience might do so, for, with deference to the learned gentleman’s opinion, I think some men, under some circumstances, may as lawfully take ten per cent, as others five. I mean foro conscienim, and abstracted from positive laws ; and in this most of the writers upon the law of nature agree. 1 own that usury seems to liare been always condemned by the antient laws of England, though an usurer was only punishable by ecclesiastical censures in his lifetime. But if it was found by twelve men after his death, that he died an usurer, he was compared to a thief, his goods were forfeited to die King, and his lands escheated. 3 Just. 155. And as usury was an offence punishable by the law of the Church, we frequently find it said to be against the law of God. Not that it is prohibited by the Gospel, though it might be so by the canons and decrees of the,Pope, which last, in the times of superstition, the artful priest taught die world to believe were as much the law of God, as the Gospel itself. But now mankind are more enlightened, and protestants, at least, allow nothing to be against the law of God, but what is prohibited in holy writ. 1 Hawk. 245. As to the prohibition in the Jewish law, that is not at all obligatory upon Christians. The law of Moses was promtilged to a particular people, and was only binding upon them to whom it was promulged. It is not pretended, nor is it any where said to be an universal law to mankind; and that it is not binding upon Christians, that is, the actual and political pari of it, we have the authoj'ity of die Church, viz. seven of the thirty-nine articles, U is true die moral *28 part is there said to be binding, and so it would be if it was not in the law of Moses; the moral law being eternally and universally binding upon mankind. But in truth, this prohibition is not a general, but a partial prohibition, respecting the Jewish nation only, for they are permitted to take usury of strangers, though not of one another, which is plain proof that usury is not against the moral law, for if it was, the Jews, who were the sanctified and chosen people of God, would never have been permitted the practice of it at all. Indeed, it is impious to suppose that God would tolerate the practice of a thing simply and naturally unlawful. This prohibition then to die Jews was merely political. First, to obviate that avaricious disposition so observable in that people, and to prevent it from-running out into oppression of one another; and second, thereby to cement them into a closer bond of amity to.each other. Third, to secure and strengthen that democratical government Moses intended to institute, by preserving some kind of equality in property. Upon which principle, the laws of Jubilee, and against alienating land for ever, were also instituted. It must, however, be owned, the primitive Christians took no usury; probably out of a superstitious reverence to the Mosaic law, which might be the first occasion of its being condemned by the Church, though afterwards abused by the Clergy, who made a market of that, as well as other offences, by the practice of commuting for penance. Whoever has a mind to be further convinced, that usury is not against natural justice, let him read Puflendorf’s law of nature, B. 5. c. 7». s. 8.adjinem, and Barbevrac’s notes thereupon ; where he may see it proved to a demonstration, that it is neither against the law of God nor of nature, but even necessary in the present state of human affairs, and of great use in all trading countries. Grotius, who seems to condem the name, allows the thing. He says, Lib. 2. c. 12. there are some things that look like usury, but are parts of another nature, as the amends that ought to be made or credited for the loss he is at, in being out of his money, &c. which is the very thing contended for; viz. if I lend money, or money is owing to me, I ought to have something for the use of my money, and the loss I sustain for want of it. This is the very principle upon which usury is proved to be consistent with natural justice. It is no matter whether you call it usury or interest, amends or damages ; the thing is the same ; and certainly in the present state of human affairs, where many persons' estates consist all in money, and they cannot, nay, it would be inconvenient that they should employ it in trade and husbandry, no just reason can be given why they should not make a profit of their estate, as well as those who have lands, and rent them out; especially when their money is as useful *29 to the Commonwealth; for no considerable trade could be carried on without it. Usury was allowed by the Roman law, Puff. 276, note 4, and is practised in almost all civilized nations, at least, in all Christendom It is indeed prohibited by the Alcoran ; but even the professors of that religion evade it, by lending money to have a share, as a fourth or fifth part of the gain made* by it, which is the same thing, for in equity there is no difference whether I agree for a certain gab before hand, or run the risque of an uncertain one. Puff. 276. As to the quantum, that may be taken for usury according to natural justice, Grotius ad Lucam 6. 35. (See Barbeyrac’s note on Grotius, 2. 12. 20.,) proportions it not by the gain of the borrower, but the loss that accrues to the lender, and that so much ought to be paid by the borrower, as the lender in the way of his calling, usually makes of his money, allowance being made for hazard. But because it would be difficult to prove and adjust this exactly, and such a latitude would give an opportunity to ill men to insist upon too great an interest, the policy of most nations has reduced it to a certain standard, which is more or less according to the different circumstances of each state. In trading countries, as in Holland, it is very low, two and a half or three per cent. In Venice where there is no trade, it is eight per cent., and interest is high in all the inland parts of Germany. The rate of interest in England has been reduced from time to time, as money has grown more plenty and its trade increased. By the —-H. 8. it is prohibited to take more than ten per cent, under a penalty. This is the first law that made usury cognizable in the King’s court. Thus it continued till James I., when interest was reduced to eight per cent.; after the restoration, it was reduced to six, and by the -Ann-, to five. In most of the English plantations, I am told it is now at ten. Twelve was permitted by the Roman law till the time of Justinian, who reduced it to eight. Puff. 276, note 4. Thus it varies in different countries, and in the same country, according to the different circumstances of it. To conclude: where the rate of interest is settled by law in any country, no good man ought to take more though it was not prohibited under a penalty; but where there is no law, the rule laid down by Grotius, seems very equitable, viz. in proportion to the loss that accrues to the lender, and therefore, a trading person who usually makes a great profit of his money, may with good conscience require more than one, whose money lies dead upon his hands. From whence I would observe, that the taking more than six per Cent, before there was any law, by some men, under some circumstances, was not criminal and unrighteous as is pretended ; yet I should be sorry to be thought an advocate for *30 excessive usury, as it is certainly introductory of great oppression, and I am heartily glad it is settled by law. v All that I contend for, is, that a man may not be punished for any contract of this sort, before there was any law to make it penal, and I hope judgment will be given for the defendant.
This case was agreed by the parties, and so no judgment given.
Reported by Edward Barradall, Esq.